# Pollard *et al.* v. American Freehold Land Mortgage Co.

*Bill in Equity to compel the Mortgagor to affirm or disaffirm the Purchase by Mortgagee at Sale under the Mortgage.*

1. *Decree relieving disabilities of coverture; not void because it fails to state the married woman had a separate estate.*—Where, under statutory provisions as they formerly existed, a married woman, desiring to be relieved of the disabilities of coverture, filed a petition in every respect sufficient, under the statute, to call into exercise the power or jurisdiction conferred upon the chancellor, a decree rendered thereon removing the disabilities of coverture, is valid, although it does not affirm that the petitioner had a statutory or other separate estate.

2. *Same; not open to collateral attack on the ground of the insufficiency of the evidence to support it.*—Where the allegations of the petition of a married woman to be relieved of the disabilities of coverture were sufficient to call the jurisdiction of the chancellor into exercise, the validity of the decree rendered thereon, removing the disabilities of coverture, can not be collaterally assailed on the ground that there was not sufficient evidence to support said decree.

3. *Same; not void because there was no evidence of record that petitioner owned a separate estate.*—Where, at the time a married woman, desiring to be relieved of the disabilities of coverture, files her petition,

19

| 103 | 289 |
|-----|-----|
| 103 | 307 |
| 103 | 289 |
| 109 | 446 |

| 103 | 289 |
|-----|-----|
| 118 | 637 |
| 119 | 520 |
| 103 | 289 |
| s120 | 5 |
| 120 | 6 |
| 120 | 7 |

| 103 | 289 |
|-----|-----|
| s120 | 1 |
| 125 | 533 |

| 103 | 289 |
|-----|-----|
| s120 | 1 |
| s127 | 234 |

| 103 | 289 |
|-----|-----|
| 132 | 161 |

| 103 | 289 |
|-----|-----|
| 139 | 555 |

which is in every respect sufficient to call into exercise the jurisdiction conferred upon the chancellor, the husband files his written assent to the granting of the relief, the decree rendered thereon, removing the disabilities of coverture, although it does not affirm that the petitioner was possessed of a separate estate, is not void on the ground that the record does not show that there was evidence of the ownership by the petitioner of a separate estate; every essential fact was proved, and conclusively proved, by the written assent of the husband which was filed.

4. *Same; petition presumed to be filed before decree rendered.*—When a petition and decree rendered thereon have been filed for record in the office of the register, they become a record of absolute verity, incapable of impeachment by extrinsic evidence, except for fraud or collusion; and when a decree bears the same date, refers to and recites much of the substance of a petition, manifesting its existence, and that it was the immediate subject of judicial consideration, upon which the said decree was rendered, it will be presumed, on collateral attack, to have been rendered after the filing of the petition.

5. *Stipulations for attorney's fee in the mortgage; not applicable to a suit by the mortgagee after foreclosure.*—The stipulations in a mortgage that "if it shall become necessary to employ an attorney to foreclose this mortgage, or collect any part of the debt herein secured," the mortgagors "will pay such reasonable attorney's fees, and all other lawful and proper costs and expenses that may be incurred in that behalf," does not entitle the mortgagee to attorney's fees or costs or expenses incurred in the prosecution of a suit by the mortgagee to compel the mortgagor to elect to affirm or disaffirm a sale of the land made under a power in the mortgage, at which sale the mortgagee became the purchaser, without being authorized thereto in the mortgage.

APPEAL from the City Court of Montgomery, in Equity. Heard before the Hon. THOMAS M. ARRINGTON.

The bill in this case was filed in March, 1889, by the American Freehold Land Mortgage Company against Charles T. Pollard, Rebecca M. Pollard, his wife, A. P. DeBardelaben and F. W. Dunton.

In January, 1886, Charles T. Pollard and Rebecca M. Pollard executed a mortgage to the American Freehold Land Mortgage Company, to secure a loan of $21,000, which was evidenced by their promissory notes, and notes for the payment of interest. At the time of executing this mortgage, they also executed another mortgage to B. K. Collier, which referred to the mortgage to the American Freehold Land Mortgage Company, and declared that it was subordinate to the mortgage to said

company. This second mortgage was assigned by B. K. Collier to F. W. Dunton.

Charles T. Pollard made default in the payment of the interest note falling due December, 1888, and thereupon the mortgage company, in pursuance of the provisions contained in the mortgage, entered into possession of the property conveyed in said mortgage, and subsequently sold the property under a provision of sale contained in the said mortgage. Notwithstanding there was no stipulation or authority given in the mortgage for the mortgagee to become the purchaser at its foreclosure sale, the American Freehold Land Mortgage Company did become the purchaser, and thereupon filed the present bill to compel the mortgagors and the junior mortgagee to elect to affirm or disaffirm said sale, and in the event of a disaffirmance to have the said mortgage foreclosed by order of the court.

The bill as amended averred that, at the time of the execution of the mortgage, Rebecca M. Pollard was a married woman, the wife of Charles T. Pollard, and that a part of the property conveyed in the mortgage was her statutory separate estate; that prior to the execution of said mortgage she had filed her petition in the city court of Montgomery, sitting in equity, to have her disabilities of coverture removed, and that in this petition her husband, Charles T. Pollard, joined, giving his consent to the rendition of the decree; and that in pursuance of said petition there was a decree rendered removing the disabilities of coverture. It was also averred that after the execution of this mortgage, the mortgagors sold the equity of redemption to A. P. DeBardelaben, and upon his failure to pay the purchase money therefor, they foreclosed the mortgage executed by him to them, and Mrs. Pollard became the purchaser; and that the said DeBardelaben was in possession of the property at the time the complainant took possession thereof. To the bill, as amended, Charles T. Pollard and Rebecca M. Pollard filed their answers setting forth that the proceedings to remove the disabilities of coverture of Mrs. Rebecca M. Pollard were null and void, in that the petition on which said decree was rendered was not filed in court, as the statute requires, before the decree was rendered by the chancellor, and further, that while the petition contained the jurisdictional averment that Mrs.

[Pollard *et al.* v. American Freehold Land Mortgage Co.]

Pollard was seized and possessed of a separate estate, neither the evidence in the cause showed, nor did the decree ascertain, said fact. These defendants also demurred to the bill on the same grounds. The other facts pertaining to the rulings of the court, which are reviewed on appeal, are sufficiently stated in the opinion.

On the final submission of the cause, on pleadings and proof, the chancellor overruled the respondent's demurrers, and decreed "that said sale and purchase be, and the same is hereby affirmed." The respondents, Charles T. Pollard and Rebecca M. Pollard, appeal, and assign as error this decree of the chancellor.

JOHN G. WINTER, for appellant.—1. The proceding instituted under the statute to relieve married women of the disabilities of coverture, is a special proceeding, and the court in the exercise of its special powers conferred thereby, is necessarily, as to said proceedings, a court of limited or special jurisdiction; or a court of general jurisdiction in the exercise of special powers.—*Ashford v. Watkins*, 70 Ala. 161; *Falk v. Hecht*, 75 Ala. 293; *Stoutz v. Burke*, 74 Ala. 530; *Chandler v. Hanna*, 73 Ala. 390; *Janney v. Buell*, 55 Ala. 408; *Pettus v. McClannahan*, 52 Ala. 55.

2. The rule seems to be settled in this State, that in reference to courts of limited or special jurisdiction, where the decree recites the existence of jurisdictional facts, it is not void, where jurisdiction is acquired by proper pleading, even where the evidence is entirely wanting. And it would seem that where the evidence, as well as the decree, is silent, the converse of the proposition is true.—*Gunn v. Howell*, 27 Ala. 663; *Graham v. Reynolds*, 45 Ala. 578; *Molett v. Keenan*, 22 Ala. 484; 2 Brick. Dig., 157, § 11.

3. In any event, we contend, that in the proceeding under the statute to relieve married women of the disabilities of coverture, not only should the petition allege, but the decree must recite, the jurisdictional fact that she owned or possessed a seperate estate; or the record must disclose the fact, namely, the evidence must show that the fact exists, if the decree fails to so recite.— *Wyatt v. Rambo*, 29 Ala. 510; *Pettus v. McClannahan*, 52 Ala. 55; *Wharton v. Morange*, 62 Ala. 201; *Joiner v. Win-*

[Pollard *et al.* v. American Freehold Land Mortgage Co.]

*ston,* 68 Ala. 129 ; *Molett v. Keenan,* 22 Ala. 484 ; 2 Brick. Dig. 156, § 5.

4. The stipulation in the mortgage as to payment of attorney's fees did not justify the complainant in appropriating the surplus of the purchase money to the payment of attorney's fees in the prosecution of the present suit.—*A. F. L. M. Co. v. McCall,* 96 Ala. 200; *Bedell v. N. E. M. Sec. Co.,* 91 Ala. 325; *Bynum v. Frederick,* 81 Ala. 489 ; *Tompkins v. Drennen,* 95 Ala. 463.

WEBB & TILLMAN and CALDWELL BRADSHAW, *contra.*— The sale and conveyance to DeBardelaben estopped Mrs. Pollard from denying the validity of the mortgage.— *Pratt v. Nixon,* 91 Ala. 192 ; *Kennedy v. Brown,* 61 Ala. 296 ; *McCravey v. Remson,* 19 Ala. 430 ; 1 Jones on Mortgages, §§ 683, 744, 746, 749, 750; 2 Jones on Mortgages, §§ 1483, 1494.

The complainant was entitled to attorney's fees for the filing of the present suit.—*Bedell v. N. E. M. S. Co.* 91 Ala. 325 ; *A. F. L. M Co. v. McCall,* 96 Ala. 200 ; *McCall v. A. F. L. M. Co.,* 99 Ala. 427; *Speakman v. Oaks,* 97 Ala. 503 ; *McLean v. Presley,* 56 Ala. 211; *A. F. L. M. Co. v. Sewell,* 92 Ala. 168 ; *Garland v. Watson,* 74 Ala. 323 ; *McHan v. Ordway,* 76 Ala. 347.

BRICKELL, C. J.—The primary question raised upon the record, is whether the decree of the judge of the city court of Montgomery, sitting as a chancellor, rendered on the 20th day of January, 1886, relieving the appellant, Rebecca M. Pollard, from the disabilities of coverture, is valid, empowering her to execute the mortgage under which the appellee deduces title to the lands in controversy. The city court had and has, within the county of Montgomery, concurrent jurisdiction with the court of chancery ; and to the judge of the court there is an express grant of "all the powers exercised now, or hereafter to be exercised by the chancellors of this State." Pamph. Acts, 1880-81, p. 267. The validity of the decree must, therefore, be subjected to the same tests, to which it would have been subjected, if it had been rendered by a chancellor. A statute of force at the time of the rendition of the decree, authorized the several chancellors, sitting in term time or in vacation, "to relieve married women of the disabilities of coverture as to their

statutory and other separate estates so far as to invest them with the right to buy, sell, hold, convey and mortgage real and personal property, and to sue and be sued as *femme sole.*'' The exercise of the authority could be invoked only by a married woman; and the mode of procedure prescribed was a petition filed in the chancery district of her residence, praying that, for the purposes expressed in the statute, she be decreed a *femme sole.* Notice of the petition was given to the husband only; and if by writing signed by him and filed in the cause, he assented to the granting of the prayer of the petition, the decree followed as matter of course, if it appeared to the chancellor that the interest of the wife required it; if he did not assent, proof must have been taken as in other chancery causes.

The uniform construction of the statute, while of force, was that it was a delegation to the *chancellor*, not to *the court of chancery*, of a power inherent in the General Assembly, and which without express legislative grant, no judicial officer or tribunal, could rightfully exercise. Being strictly a statutory power, without the ordinary, usual sphere of judicial power, in its exercise the chancellor was bounded and limited by the terms of the statute. The indispensable prerequisite to the exercise of the power, was the petition, complaint or application of a married woman, showing her residence in the chancery district, alleging that she had a statutory or other separate estate, and praying the relief the chancellor had authority to grant.—*Ashford v. Watkins*, 70 Ala. 156; *Cohen v. Wollner*, 72 Ala. 233; *Doe v. Burke*, 74 Ala. 530; *Falk v. Hecht*, 75 Ala. 293; *King v. Bolling, Ib.* 306; *Meyer v. Sulzbacher*, 76 Ala. 120; *Hatcher v. Diggs, Ib.* 189.

A petition was filed by Mrs. Pollard, the sufficiency of which in every respect, to call into exercise the power or jurisdiction of the judge of the city court, has not been and can not be questioned. It contains the averment of every material fact, rendering it the duty of the judge of the city court to enter upon the inquiry, whether the decree the statute authorized him to render, should or should not be rendered. It was accompanied by the assent in writing of the husband to the grant of the prayer of the petition. The decree, the validity of which is now assailed, was rendered, and it grants, in the terms of the statute, the precise relief the judge had authority to grant.

It is insisted by the counsel for the appellants, that the decree is void, because it does not affirm that Mrs. Pollard had a statutory or other separate estate, or that there was evidence produced showing the existence of such estate. It is true, the power or jurisdiction could not be properly exercised, unless upon the record it appeared that she had such estate. For it was not within the legislative intent, that any and every married woman should be relieved from the disabilities of coverture; but only those who had an estate, in reference to which the capacity expressed in the statute could be employed.— *Cohen v. Wollner, supra; Doe v. Burke, supra.* It was the petition, or complaint, from which it must have appeared that such estate existed, and if that did not allege the fact, the proceeding would have been *coram non judice.* Jurisdiction was dependent wholly and exclusively upon the allegations of the petition; and if it was wanting in material allegations, the jurisdiction could not be created by proof, or by affirmation or recitals in the decree. The petition calling into exercise the power or jurisdiction of the city court, while perhaps, the decree would have been more formal, if it had affirmed the fact that Mrs. Pollard had a statutory or other separate estate, the omission of the affirmation, does not affect the regularity or validity of the decree.— *Wilson v. The Judge,* 18 Ala. 757. If there had been error or irregularity in this respect, it would have been error or irregularity intervening after jurisdiction had attached; and it is a settled axiom of the law, jurisdiction having attached, applicable to all judicial proceedings, and to all courts, whether inferior, or superior, or general, or of limited jurisdiction, that however irregular, or manifestly erroneous, the final order, judgment, or decree rendered, may be, it is not a nullity, and can not be collaterally impeached. It is merely irregular or erroneous,—it is not void.—1 Freeman on Judgments, § 135.

It is also contended that as the decree does not affirm that Mrs. Pollard had a statutory or other separate estate, it is essential that there should appear of record evidence of the fact. If there was in the contention any force, the answer could well be made, that there does appear of record evidence of the fact; the evidence which the statute contemplated, and intended should be conclusive. The wife and husband were the only parties to the pro-

ceeding, the one standing in the relation of actor, the other in that of defendant. The husband alone could give to the proceeding the form and condition of an adversary suit. No one else had property rights to be affected, and he had the graver, if not the exclusive, interest, in considering and determining whether the change of the legal status of the wife, would be of benefit or injury to her, and what would be its effect upon their marital relations. Therefore, by the terms of the statute, if in the mode prescribed the husband assented to the rendition of the decree, any and all other evidence was dispensed with. Every essential fact was proved by the assent, and conclusively proved. Besides, as we have said, the power or jurisdiction depended wholly upon the allegations of the petition—it was not dependent, in any event, upon the evidence. The allegations of the petition having called the power or jurisdiction into exercise, the sufficiency or insufficiency of the evidence to support the decree, could not become an open inquiry, when the validity of the decree is collaterally assailed.

The final contention is, that the decree was signed by the judge before the petition was filed in the office of the register, and is of consequence a nullity. The force of this contention is not very apparent, if it had been made in a direct proceeding to reverse or vacate the decree, and not collaterally, when every reasonable intendment, consistent with the record, must be made to support it. The petition was filed in the office of the register, and of the fact he made a formal endorsement upon it, designating the hour of the day on which he received it. From some cause, perhaps mere inadvertence, or it may be because he regarded the petition and decree as constituting together the file, it was his duty to keep and record, there is not a like endorsement upon the decree. The decree bears the same date, refers to and recites much of the substance of the petition, manifesting its existence, and that it was the present, immediate subject of judicial consideration, upon which the judge pronounced the definite, final sentence or judgment. If this was a direct proceeding for the reversal or vacation of the decree, and it was conceded that the petition must have been filed (by which we mean no more than that it must have been delivered into the official custody of the register) prior to the signing of the decree, there could be no hesitancy,

in referring the filing to a time preceding the signing of the decree. The recitals of the decree, the usual, orderly course of practice and procedure, and the presumption of regularity, not of irregularity, which would have obtained, would have compelled the reference.

The petition must have been in existence, present and open to the consideration of the chancellor or judge, before the rendition of the decree. It was the petition alleging the existence of the material facts which conferred the statutory jurisdiction or power. And the petition must have been filed in the office of the register in chancery, of the chancery district of the residence of the petitioner. This, however, is not saying that the filing of the petition must have preceded the signing of the decree. If that were true, the inquiry would at once arise, what appreciable point of time must have intervened between the filing of the petition and the signing of the decree? Would one hour, or one minute, have sufficed? It was not a very formal proceeding the statute authorized and contemplated. It was intended to be simple, speedy and inexpensive; and if husband and wife concurred in the granting of the prayer of the petition, there was no duty for the register to perform, other than receiving the petition and the decree when delivered to him, and the record of them. The power or jurisdiction of the judge was as capable of exercise in vacation, as in term time; and it could not have been of infrequent occurrence, that the petition was presented, examined and considered, and the decree signed, before the formal filing of the petition in the office of the register, and until the petition and the decree were filed in the office of the register, the decree was not operative; it was not a judgment or decree; but when they were filed, the decree became operative, changing the status of the wife, and investing her with the capacity and power expressed in the statute. A construction of the statute, which would make the precedent filing of the petition in the office of the register, when husband and wife concurred in the granting of the prayer of the petition, an element of jurisdiction, would not be in accordance with the words, spirit, and policy of the statute, and would convert a mere ceremony into matter of substance.

The petition and decree having been filed in the office of the register for record, became a record of absolute,

incontrovertible verity, incapable of impeachment by extrinsic evidence, except for fraud and collusion.—1 Freeman on Judgments, § 76. Any other rule or principle would be of most disastrous results. If the parol evidence it was proposed to introduce, had the strength imputed to it by counsel, the case would afford a striking illustration of the wisdom and conservatism of the rule. The decree has remained of record for years, attended with every mark and evidence of regularity and verity, usually attending such decrees, inviting the parties to rely and act upon it, and the trust and confidence of the public. The parties did act upon it; and strangers dealing with them in good faith, in reliance upon the record and decree, and all that they legally import, have acquired large interests, in ignorance of the facts resting in the memory and breasts of witnesses, which it is asserted vitiate the decree. It would be a precedent of unmixed evil, if the decree and the rights which have been acquired under it, were brushed away by parol evidence of facts, which if they are of any force, are in direct contradiction of the record, and all that it legally imports. We do not doubt the decree was valid, empowering Mrs. Pollard to execute the mortgage.

A mortgagee having power to foreclose by sale, unless the right is conferred by the power, can not, at the sale, make a valid purchase directly, or indirectly through the agency of another. The purchase is not absolutely void—it is binding on the mortgagee—and is voidable only at the election of the mortgagor, or of whoever may have succeeded to the equity of redemption, seasonably expressed.—*Knox v. Armistead*, 87 Ala. 511. The election residing in the mortgagor, or the holder of the equity of redemption, operates to embarrass the title of the mortgagee, rendering it doubtful and uncertain in duration. For his relief, courts of equity in this State entertain bills to require the mortgagor, or whoever may have succeeded to the equity of redemption, to manifest and exercise the election to affirm or disaffirm the purchase.—*McLean v. Presley*, 56 Ala. 211; *Harris v. Miller*, 71 Ala. 26; *McHan v. Ordway*, 76 Ala. 347; *Craddock v. Am. Mortgage Co.*, 88 Ala. 281; *Am. Mortgage Co. v. Sewell*, 92 Ala. 163.

The purpose of the present bill is to require a junior mortgagee and the mortgagors to elect an avoidance or

an affirmance of a purchase the appellee had made at a foreclosure sale under a power in the mortgage, the power not conferring the right to purchase. The mortgagors by answer elect a confirmation of the purchase, in the event the mortgage is declared a binding, operative conveyance.

If the election be of affirmance of the purchase, the duty devolves on the mortgagee to account for and apply the purchase money, as he would have been bound to account for and apply it, if a stranger had become the purchaser, and from him the purchase money had been received. This is the corresponding right and equity of the mortgagor, or the owner of the equity of redemption, and it must be conceded by the mortgagee, for it is only upon the condition of its concession, that the court can intervene for his relief.

The original and amended bills show that the principal and interest of the mortgage debt, at the time of the foreclosure sale, were twenty-three thousand, one hundred and thirty-three 60–100 dollars; and that the purchase money was twenty-five thousand, four hundred and fifty-seven 40–100 dollars, the purchase money exceeding the debt and interest, twenty-three hundred and twenty-three 80–100 dollars. The bill alleges that the costs attending the sale, and the fees of attorneys employed by the complainant to superintend the sale and for the filing of the present bill, exceed twenty-seven hundred dollars, and asserts the right to apply the surplus or excess of the purchase money to the payment of these costs and fees. The answers of the mortgagors put in issue these allegations as to the costs of the sale and fees of the attorneys, and there was no evidence introduced to support them. It is obvious the city court erred in decreeing a confirmation of the purchase in the absence of such evidence. Without evidence, it ought not to have been assumed the allegations of the bill were true, nor ought it to have been assumed that the costs attending the sale and fees claimed were necessary and reasonable.

The mortgage contains a stipulation in these words: "That if it shall become necessary to employ an attorney to foreclose this mortgage, or collect any part of the debt herein secured, they," (the mortgagors) "will pay such reasonable attorney's fees, and all other lawful and

proper costs and expenses, that may be incurred by the party of the second part," (the mortgagee), "in that behalf, and this mortgage shall stand as security for the same." The power of sale directs that in the event of its exercise, the proceeds shall be applied, "first to the payment of all expenses incurred in advertising and making the same, and to the payment of such reasonable attorney's fees as may be incurred therein," &c.

A stipulation in a mortgage binding the mortgagor to the payment of a reasonable attorney's fee the mortgagee may incur in the foreclosure by a sale under the power, or by a foreclosure in equity, is recognized as valid by repeated decisions of this court.—*Munter v. Linn*, 61 Ala. 492 ; *Bynum v. Frederick*, 81 Ala. 489 ; *Lehman v. Comer*, 89 Ala. 579; *Speakman v. Oaks*, 97 Ala. 503; *Boyd v. Jones*, 96 Ala. 305 ; *McCall v. Am. Mortgage Co.*, 99 Ala. 427. The stipulations by their terms relate to two events in which the mortgagors are to be liable for the fees of the attorney of the mortgagee. The first did not occur ; the foreclosure was by the exercise of the power of sale. If there had been a foreclosure by bill in equity, the mortgagee would not have been entitled to charge the mortgagors with counsel fees, unless the bill had shown more than the mere default in the payment of the mortgage debt.—*Bedell v. New England Mortgage Co.*, 91 Ala. 325 ; *Am. Mortgage Co. v. McCall*, 96 Ala. 200. There is no just or reasonable construction of the stipulation which would entitle the mortgagee to compensation for the fees of attorneys he may have become liable to pay in and about the prosecution of this suit. It is not the kind or character of suit which falls within the terms of the stipulation, or which may be supposed to have been within the contemplation of the parties. The default of the mortgagors did not give rise to, or create the necessity for it. The defective foreclosure, from which the necessity or occasion for it arises, was the act of the mortgagee, the responsibility of which was voluntarily assumed, and can not be shifted to the mortgagors, who were, as was with them a matter of right, merely passive.—*Clark v. Stilson*, 36 Mich. 482. The decree of the city court in its results fixes upon the mortgagors a liability for this fee as it is claimed by the bill; a liability which could not have been fixed, if there had been full evi-

[Guilford *et al.* v. Reeves & Co.]

dence that it was reasonable. And as the foreclosure was defective,—not of itself cutting off the equity of redemption,—defective in consequence of the voluntary act of the mortgagee, it is not the foreclosure contemplated by the stipulation of the mortgage. There can not be a retainer from the purchase money for any part of the expenses incident to or attendant upon it, nor for the fees of the attorney aiding or advising in reference to it.

There are other questions suggested by the record, on which it is not deemed necessary to express an opinion. The decree of the city court must be reversed and the cause remanded for further proceedings in conformity to this opinion.

Reversed and remanded.