# British & American Mortgage Co. *et al.* v. Norton *et al.*

*Bill in Equity to redeem from under a Mortgage.*

1. *Attachment; equity of redemption subject to levy under attachment.*—An equity of redemption in lands is subject to a writ of attachment sued out by a creditor of the mortgagor.

2. *Fraudulent conveyance; what necessary to sustain a conveyance by debtor to his wife.*—Where creditors attack a conveyance by their debtor to his wife, and said conveyance is sought to be sustained on the ground that it was made in payment of an indebtedness from the grantor to the grantee, it is necessary that the parties seeking to sustain the conveyance should aver in their answer to the bill and prove, not only the *bona fides* of the transaction, but the facts in detail showing when,

[British & American Mortgage Co. *et al.* v. Norton *et al.*]

how and where the indebtedness expressed as a consideration of the conveyance arose, the valuation of the lands conveyed, and that the conveyance was received by the wife in payment of her alleged debt at a fair valuation, without the reservation of a benefit to her husband. The burden of proof is upon the parties seeking to sustain such conveyance.

3. *Mortgage; right of mortgagee to purchase at his own sale.*—The provision in a mortgage "that any irregularity in giving notice of or in making the sale, shall not, in any manner affect the sale," does not of itself give the mortgagee the right to purchase at the foreclosure sale under the power contained in the instrument; and in the absence of a stipulation in the mortgage authorizing the mortgagee to purchase at a sale under the power, the provision above quoted does not debar the right of the mortgagor to disaffirm the sale by reason of the mortgagee purchasing thereat.

4. *Same; when purchaser not shown to hold under color of title.* Where a mortgagee, without being so authorized in the mortgage, becomes the purchaser of the mortgaged premises at a sale under the power, and subsequently enters into a contract with a third person for the sale to him of said lands and puts him in possession thereof, such third person does not hold possession "under color of title in good faith," within the meaning of the statute (Code, § 1540); and is not, therefore, exempt from liability for damages or rents for more than one year before the commencement of the suit seeking to redeem from under the mortgage.

APPEAL from the Chancery Court of Blount.

Heard before the Hon. JOHN C. CARMICHAEL.

The bill in this case was filed on the 5th day of June, 1895, by George C. Norton, G. H. Mourning, Alvah L. Terry and Douglas Barclay, as surviving partners of the firm of J. M. Robinson & Co., and avers the following facts: On the 6th day of December, 1892, B. R. Williams, H. W. Williams and R. L. Williams, as partners, under the name of B. R. Williams & Sons, were indebted to said J. M. Robinson & Co., a firm composed of complainants and J. M. Robinson, deceased, in the sum of $1,138.80, for goods before that time sold to them. On said date said Robinson & Co. sued out an attachment from the circuit court of Cullman county, against the said B. R. Williams, H. M. Williams and R.

L. Williams as partners, and a branch of this attachment was placed in the hands of the sheriff of Blount county on the 6th of December, 1892, and was by him on the same day levied on the property in controversy, as the property of said B. R. Williams, which is situated in said county and then belonged to him. The attachment was duly returned to the circuit court of Cullman county. Upon the levy of said atachment a portion of said land was claimed by B. R. Williams as exempt, which claim was contested by the complainants. By reason of the delays in the transaction of the business of said court, neither of said causes were reached or called for trial until the 18th day of March, 1895, when a judgment was rendered in said contest in favor of the complainants, and the same day a judgment was rendered in favor of the plaintiffs in said attachment suit for the sum of $1,336.38 and costs, condemning said lands to be sold for the payment of said debt and directing a *venditioni exponas* to issue for that purpose. Said writ was issued, and on the 16th day of April, 1895, was placed in the hands of the sheriff of Blount county, who, after giving notice of the time, place and terms of sale, as required by law, offered said lands for sale on Monday, May 20th, 1895, and complainants, being the highest bidder, purchased the same for the sum of $35.80, which was paid to said sheriff, who executed to the complainants a deed to the land, dated and acknowledged on May 25th, 1895, a copy of which is attached to the bill. This is an ordinary sheriff's deed to the land in controversy. No other payment has been made on said judgment.

On the 18th day of April, 1888, the said B. R. Williams gave a mortgage on said lands to the British & American Mortgage Company, Limited, for the sum of $3,000 to secure money loaned. A true copy of the mortgage with the indorsements upon it, is attached to the bill as an exhibit. This is a mortgage executed by said B. R. Williams and Jane Williams, his wife, to said mortgage company, and is dated April 18, 1888, to secure the sum of $3,000, which is evidenced by five installment notes, due, respectively, on the 1st day of November, 1888, 1889, 1890, 1891 and 1892, and pro-

vides that if default is made in the payment of any of said notes for fifteen days after it becomes due, the whole sum of money in said mortgage secured might, at the option of the holder of said notes and at said holder's option only and without notice, be declared due and payable, and the party of the second part, his agent, attorney or assignée, might proceed to sell said lands at public outcry to the highest bidder, etc., after giving certain notice, etc. There is no authority given in said mortgage to the mortgagee or its assigns to purchase at such sale. The mortgage was duly witnessed and acknowledged so as to convey the homestead, and was filed for record and recorded in the office of the probate judge of Blount county, Alabama, on May 5th, 1888. The mortgage debt was partially paid, but default was made in the payment of a portion of it, but to what extent is not averred; and said land was sold by said company under the power contained in the mortgage on the 15th of March, 1893, for the sum of $2,215.05, and purchased by one Albert L. Richardson, to whom the mortgage company executed its deed. This purchase was made for said company, and Richardson did not pay, and was not expected to pay, anything on account of said purchase, but shortly after conveyed said lands to said company without any consideration. The bill averred that the mortgage company was in fact the purchaser of said lands at said sale, and that the same is voidable at the instance of complainants, who are entitled to redeem the same, and who file this bill for that purpose. The complainants in the bill allege that they were ready and willing, and therein offered, to pay any amounts which the court might determine to be due on said mortgage debt or necessary to pay and satisfy the same in full. The bill avers that one Thos. B. Williams, a son of said B. R. Williams, claims some interest in said land, but whatever right he might have is subject to the right of complainants to redeem the same. The bill than states the names and residences of the defendants, who are said mortgage company, B. R. Williams and Thos. B. Williams.

The prayer of the bill was that an account be taken to ascertain the rents and profits of the land since the

same went into the possession of the British & American Mortgage Company, Limited, and also for the purpose of ascertaining the balance due on said mortgage debt, and that the complainants be allowed to redeem said lands from the British & American Mortgage Company, Limited, upon the payment of the balance so ascertained to be due, which balance the complainants offered to pay.

There was a demurrer to the bill, which the chancellor sustained, dismissing the bill. From this decree the complainants appealed to this court and the decree was reversed. After the reversal of the decree and the remandment of the cause, the British & American Mortgage Company, Limited, filed a plea, in which it was alleged that before the levy of the writ of attachment, B. R. Williams had sold and conveyed for a valuable consideration his equity of redemption in the lands levied upon, to his wife, Mary Jane Williams, and that at the time of the levy of said writ, B. R. Williams owned no interest in the lands.

All of the defendants, the British & American Mortgage Company, Limited, B. R. Williams and T. B. Williams, filed separate answers to the bill, in which they set up substantially the same facts as were set up in the plea of the mortgage company. Subsequently the complainants amended the bill, and in the amendment they admitted the execution of the deed from B. R. Williams to his wife, but charged that it was made after the levy of the writ of attachment and was executed without any consideration whatever, and with the intent to hinder, delay and defraud the complainants, and to put said property beyond the reach of the complainants under a false and fraudulent claim in favor of the said Mary Jane Williams.

There were separate answers filed by the defendants to the bill as amended, in which they denied that the deed from B. R. Williams to Mary Jane Williams, was executed for the purpose of hindering, delaying and defrauding the creditors of said B. R. Williams, and averred that it was executed in payment of a *bona fide* debt from the said B. R. Williams to his wife, Mary J.

Williams. The other facts of the case are sufficiently stated in the opinion.

Upon the final hearing of the cause, upon the pleadings and proof, the chancellor rendered a decree granting the complainants the relief prayed for and ordered accordingly. From this decree the defendants appeal, and assign the rendition thereof as error.

EMERY C. HALL and GEORGE H. PARKER, for appellants.—An attachment proceeding is essentially a legal proceeding, and can operate alone on legal estate. An equity of redemption being equitable in its character, is not subject to be levied upon under a writ of attachment.—Code, 1896, § 540; *Childress v. Monette*, 54 Ala. 317; *Henderson v. Horton*, 72 Ala. 32; *Scott v. Ware*, 65 Ala. 174; *McMillan v. Otis*, 74 Ala. 560; *Teague v. LeGrand*, 85 Ala. 473.; 2 Perry on Trusts, § 602; 2 Jones on Mortg., § 808.

If the right to disaffirm the sale because the mortgagee purchased at its own sale was waived by B. R. Williams at the time of the execution of the mortgage—a time when the complainants were in no wise interested—complainants, standing in his shoes, cannot now affirm it. The provisions of the power limiting and regulating the sale are for the benefit of the debtor. They are for his protection, and they may be waived by him, or his conduct may estop him from taking advantage of any irregularities.—*Armstead ets. Knox*, 87 Ala. 511-13.

An attachment against a partnership by its firm name can only be levied upon partnership property. It cannot be levied on the individual property of partners.—*Watts v. Rice & Wilson*, 75 Ala. 289-291.

Under the pleading and evidence in the case the bill should have been dismissed.—*Tyson et al. v. Decatur Land Co.*, 26 So. Rep. 507; 6 Am. & Eng. Encyc. Law, 804; *Mortgage Co. v. Dykes*, 111 Ala. 178-192; Story's Equity Pleading, § 697.

Where a mortgage binds the mortgagor to a payment of an attorney's fee in foreclosure proceedings under the power of sale, or by suit in chancery, the fee thus incurred is a lawful charge, and must be paid by the party

redeeming.—*McCall v. Am. Mortgage Co.*, 99 Ala. 427, 431; *Bedell v. N. E. M. Security Co.*, 91 Ala. 325-327. On redemption lawful charges must be paid. And it matters not whether it is the common law right of re-demption, or that given by statute. The words "lawful charges" is rather a broad term.—*Grigg v. Banks*, 59 Ala. 311-317; *Lehman, Durr & Co. v. Collins*, 69 Ala. 127-132; *Couthway v. Berghause*, 25 Ala. 393.

Thos. B. Williams is not chargeable with rent for more than one year before the filing of the bill in this case. But the chancellor decreed that rent be charged against defendants for the whole time they, or their privies, have been in possession.—Code of 1896, § 1540; *Dozier v. Mitchell*, 65 Ala. 511-520; *Keith v. McLaughlin*, 114 Ala. 60-4.

WHITE & HOWZE, *contra*.—Pleadings on the part of the defendants are not sufficient to meet the case of the complainants. The answer must put in issue all the facts relied on by the defendant in bar of the relief sought by the complainant and evidence cannot be of-fered of extraneous facts, or facts that are not averred and put in proper issue.—*Grady v. Robinson*, 28 Ala. 289; *Hodges v. Coleman*, 76 Ala. 103. The facts neces-sary to be averred in defense of a bill in which the cred-itors attack a conveyance as fraudulent, are the exist-ence of the *bona fides* of the debt which the conveyance was made to pay; that the property was conveyed at its reasonable value; that no benefit was reserved to the grantor.—*Bell v. Kendall*, 93 Ala. 489; *Pollak v. Searcy*, 84 Ala. 259.

The fact that the property has been conveyed by a debtor on the recited consideration of an antecedent debt raises a presumption of unfairness and bad faith as between the debtor and his other creditors and casts on him the onus of showing that the sale was fair and made in good faith, and proof must be fuller and clearer when the conveyance is made to a relative.—*Robinson v. Moseley*, 93 Ala. 72. In such case the burden is on the defendant to prove the *bona fides* of the debt, the valua-tion of the property and that it was received in payment

at a fair valuation without reservation of a benefit.— *Bailey v. Levy*, 115 Ala. 565; *Hamilton v. Blackwell*, 60 Ala. 545; *Thompson v. Towers*, 104 Ala. 140; *Hodges v. Coleman*, 76 Ala. 103.

TYSON, J.—Much of the argument of appellant's counsel is directed to show that a writ of attachment is not leviable upon an equity of redemption in lands. This proposition was asserted in this case when here on former appeal and decided adversely to that contention. *Norton et al v. British American Mort. Co.*, 113 Ala. 110; *Central Mining and Manufacturing Co. v. Stoven*, 45 Ala. 594; *Goode v. Longmire*, 35 Ala. 676; Drake on Attachments, §§ 232, 239; 1 Jones on Mortgages, (5th ed.), § 665 and note 2 on p. 601.

On the former appeal all of the equities of the original bill were setttled and the case as made by it only differs in respect to a matter introduced by amendment for the purpose of avoiding a certain matter of defense set up in the pleas of one of the respondents. This matter of defense as averred in the plea of respondent mortgage company, is that B. R. Williams, one of the respondents, and the defendant in attachment, being indebted to Mary Jane Williams in the sum of nineteen hundred dollars, sold and conveyed to her the lands in controversy, or all his right and interest therein, in payment and satisfaction of said indebtedness, subject, however, to the mortgage given by him to this respondent; that the sale and conveyance of said lands was made before the levy of the complainant's writ of attachment thereon, and that Williams, the defendant in attachment, had no interest in the lands subject to levy and sale at the time of the alleged levy of said writ of attachment, has not now any interest in said lands, and has not owned any leviable interest therein since the execution of said deed to Mary Jane Williams.

For the purpose of avoiding this defense, the complainants made the amendment in which they alleged that the deed was without consideration and made with intent to hinder, delay and defraud the complainants. To this amended bill each of the respondents filed separate

34

answers. The answer of Williams, the defendant in the attachment suit, admits the execution of the deed to Mary J. Williams, his wife, on the day of the levy of the attachment, but says it was to pay a *bona fide* debt which he owed her of $1,900, and that it was executed before the levy of the attachment. The respondent, Thos. R. Williams, adopts the answer of his father, B. R. Williams, with respect to the matter of the execution of the deed to his mother.

The answer of the mortgage company alleges that the deed was executed in payment and satisfaction of a *bona fide* indebtedness due and owing from B. R. Williams to his wife in the manner and amount stated in the deed, which was executed and delivered to the grantee before the levy of the writ of attachment.

We have set out with particularity the state of the pleadings for two reasons: First, on account of the insistence of the appellant mortgage company that it has proven its plea; and, second, for the purpose of showing the utter insufficiency of the answers of each of the respondents to allege the necessary facts upon which they must rely for affirmative relief.

The indebtedness of respondent, B. R. Williams, to the complainants, for which the writ of attachment was sued out to collect, is not denied by the respondents in their answers, nor the fact that it existed at the date of the execution of the deed by Williams to his wife. As to the insistence that the mortgage company has proven its plea, we have only to say that the averments of the plea are substantially the same as the allegations contained in its answer to the bill as amended, and that the burden is upon it to prove the *bona fides* of the transaction between Williams and his wife, just as it is upon Williams and his son, it having undertaken to uphold the *bona fides* of that transaction in its answer. And in order to carry the burden it is necessary that the answers should aver not only the *bona fides* of the transaction, but should state the facts in detail as to when, how and where the indebtedness arose, the valuation of the land, and that it was received by Mrs. Williams in payment of her alleged debt at a fair valuation, without the

reservation of a benefit to her husband.—*Robinson v.* *Moseley,* 98 Ala. 70; *Wooten v. Steele,* 109 Ala. 563; *Calhoun v. Hannan,* 87 Ala. 277; *Gamble v. Aultman & Co., ante,* p. 372.

The recited consideration in the deed is "for an on account of moneys received by him (Williams, the grantor) belonging to the statutory separate estate of the said Mary J. Williams, which, with interest thereon, amounts to nineteen hundred dollars, and for the purpose of paying said indebtedness," etc. This recital, of course, proves nothing as against the complainants, but we quote it for the purpose of comparing it with the evidence which was offered to support it.

The recited consideration in the deed is "for and on this deed was B. R. Williams, the grantor and husband of the grantee. He testified that they were married in November, 1855; that he received money from her which was a part of her separate estate. He recevied $225 in the fall of 1858. In 1861 he received $300 which she got from her uncle's estate. About ten years ago he received $60 more from her uncle's estate. He got $18 or $20 that she received from her mother about the same time. That this money was all used to pay for the land in controversy. That he executed the deed to her about 8 o'clock in the morning of the day the attachment was levied, but before the levy, which she accepted in full payment of the amount due by him to her. A simple addition of these amounts will show that they aggregate the sum of $603 or $605. It is evident that the only method by which the $603 or $605 can be increased to $1,900, the amount of the indebtedness recited in the deed, is by computing interest on the items composing the alleged indebtedness from the dates which Williams says he received them from his wife. And it is also obvious that more than one-half of the $1,900 is made up of interest on the $225 and the $300 received by him, respectively, in 1858 and 1861. These two items of indebtedness arose when the Code of 1852 was in force. Under its provisions, while all the property of the wife was secured to her separate use not subject to her husband's debts, yet the husband was her trustee, having the right

to manage and control the same, and privileged to enjoy the rents, income and profits arising therefrom without legal accountability to her, her heirs or legal representative for such rents, income and profits.    Indeed, he had the right to receive the property coming to his wife or to which she was entitled; and his receipt therefor was a full discharge, in law and equity.—Code, 1852, §§ 2371, 2372, 2375.    The interest upon these two items which went to make up more than one-half of the consideration of the deed was not under the evidence a liability against the grantor, and cannot be regarded as entering into the consideration to support the deed as against the complainants.    To the extent it goes to make up the $1,900, the deed must be regarded as voluntary.—*Early & Lane v. Owens*, 68 Ala. 171; *Gordon, Rankin & Co. v. Tweedy*, 71 Ala. 202; *Newlin v. McAfee*, 64 Ala. 357. With this interest emasculated, the total debt due by Williams to his wife on December 6, 1892, the date of the deed, did not exceed $775, which added to the amount due by him to the Mortgage Company at that date, to-wit, $1,944, would make the consideration of the deed $2,719—less than the original sum for which the mortgage was given, and $800 less than the value of the land according to the testimony of Hinds, $1,300 less than its value according to the testimony of Wharton, and $1,800 less than its value according to the testimony of Russell.    The conclusion cannot be escaped, if the testimony of these witnesses be true, that the value of the land exceeded greatly the amount of the debt due by Williams to his wife.    There is no reason to doubt their statement unless it can be said that the testimony of T. B. Williams, one of the respondents, the purchaser from the Mortgage Company, the son of the grantor and grantee, is to be believed in preference to them.    He testified that the land was worth between $2,500 and $3,000.    He is, of course, interested in maintaining the validity of the deed to his mother, who is shown to be dead, not only as her heir at law, but also as purchaser under a contract from the Mortgage Company.    Without imputing to him any motive to swear falsely or to intentionally under-

value the lands, his interest in the result of the litigation is sufficient reason to assign for holding that his testimony is not sufficient to overcome the facts testified to by the three disinterested witnesses. Especially is this true, since the burden of proof is upon the respondents to establish this fact.

The deed must be held to be fraudulent and to be no impediment to the exercise of the rights of the complainants to redeem the lands.

The mortgage of Williams to the Mortgage Company contained no provision authorizing the mortgagee to purchase at a sale had under the power.—*Norton v. British American Mortgage Co., supra.* The contention, however, is made, that the clause in the mortgage in these words: "It is agreed that any irregularity in giving notice of or in making the sale, shall not in any manner affect the sale," debars the right of the mortgagor to disaffirm the sale. That the purchase by the mortgagee was a mere irregularity which was cured by this stipulation. The effect of the contention is to confer upon the mortgagee the right to purchase at its own sale. We are clearly of the opinion the clause above quoted, was not intended to have this field of operation and that by no reasonable construction can it be held to have that effect.

The facts upon which the original bill predicates the complainants' right to relief being proven, and the deed assailed by the bill as amended being fraudulent and void, there is no obstacle in the way of granting the relief sought by the complainants. The chancellor so held and in his decree directed a reference to the register to take and state an account of the amount due the Mortgage Company. In his directions to the register, he ordered him not to allow the Mortgage Company a credit for any attorney's fee for making the sale under the power in the mortgage, and to charge the respondents with the fair and reasonable value of the use and occupation of the lands.—*Pollard v. American Freehold Land Mortgage Co.,* 103 Ala. 289; *Same case,* 120 Ala. 1.

The contract of purchase under which T. B. Williams held the possession of the lands at the date of the filing

[Oliver *et al.* v. Bush.]

of the bill, is not color of title under the provision of section 1540 of the Code.—*Keith v. McLaughlin,* 114 Ala. 60. Affirmed.